IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM J. McDERMOTT,
     Plaintiff,

vs.                                    Case No.: 5:16cv17/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]
     Defendant.
_____/

## **MEMORANDUM DECISION AND ORDER**

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 8, 9).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

## I.    PROCEDURAL HISTORY

On June 20, 2012, Plaintiff filed applications for DIB and SSI, and in each application he alleged disability beginning December 31, 2006, but the date was later amended to January 1, 2010 (Tr. 12).[2]  His applications were denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on May 9, 2014, and on September 12, 2014, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 12–24).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review of Plaintiff's appeal in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on April 15, 2016 (ECF No. 11).  The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

## II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* Tr. 12–24):

(a)    Plaintiff met the insured status requirements of the Act through December 31, 2011[3];

(b)    Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the amended alleged onset date;

(c)    Plaintiff had the following severe impairments:  gout, obstructive sleep apnea, neuropathy, paresthesia, status post cervical radiculopathy, obesity, depression, and anxiety;

(d)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(e)    Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he required the option to

_____

[3] Thus, the time frame relevant to Plaintiff's claim for DIB is January 1, 2010 (date of alleged onset), through December 31, 2011 (date last insured).  The time frame relevant to his claim for SSI is June 20, 2012 (the date he applied for SSI) through September 12, 2014 (the date the ALJ issued her decision).  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

alternate between sitting and standing, providing for change of position at thirty-minute intervals; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally balance, stoop, crouch, kneel, and crawl; should avoid concentrated exposure to excessive vibrations, fumes/odors/dusts/gases/moving machinery/unprotected heights; and was limited to simple, routine, and repetitive tasks;

(f)     Plaintiff was unable to perform any past relevant work;

(g)     Plaintiff was born on March 29, 1963, and thus was 49 years old, which is defined as a younger individual aged 18–49, on the alleged disability onset date. Plaintiff subsequently changed age category to closely approaching advanced age;

(h)     Plaintiff had at least a high school education and was able to communicate in English;

(i)     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferable job skill;

(j)     Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed; and

(k)     Plaintiff had not been under a disability, as defined in the Act, from January 1, 2010, through the date of the ALJ's decision.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).  Pursuant to 20 C.F.R.

§ 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent his from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent his from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.    PLAINTIFF's RELEVANT MEDICAL HISTORY[5]

Alongside the medical record and Plaintiff's own testimony, the ALJ reviewed and considered Plaintiff's impairments in determining that he had the RFC to perform light work with the additional limitations described above (Tr. 17–18).  In doing so, she evaluated Plaintiff's credibility, finding his statements regarding the intensity, persistence and limiting effects of his symptoms to not be entirely credible (Tr. 18). She also detailed the evaluative reports provided by Plaintiff's physicians and other consultants and assigned various weights to those reports (Tr. 18–22).

As is of particular relevance here, the ALJ reviewed and evaluated a disability evaluation (Tr. 317–29) performed by Osama Elshazly, M.D., as follows:

---

[5] Unless otherwise noted, the information in this section is derived from the ALJ's opinion (see Tr. 12–24).

Further, upon consultative examination in August 2013, [the claimant] had full range of motion in all joints, but for the lumbar spine. (Exhibit 7F, p.2).   He had tenderness over the lumbosacral spine, positive straight leg raise at 45 degrees sitting and supine bilaterally, and was unable to do squat, toe walking, or heel walking. (Exhibit 7F, p.12). The claimant had 4/5 grip strength and fine manipulation.  He also had decreased sensation in both lower extremities from the ankle down to the toes, mostly on the left.  He had 4/5 motor activity in the upper and lower extremities. (Exhibit 7F, p.13).   The examiner, Dr. Elshazly, assessed him with chronic back pain, most likely lumbar disc disease as the symptoms and physical exam are consistent with disc herniation; hypertension; depression; insomnia; cannot rule out narcolepsy; and umbilical hernia. (Exhibit 7F, p.13).   Dr. Elshazly concluded the claimant has several medical problems that may interfere with his daily activities. (Exhibit 7F, p.13).

Dr. Elshazly also submitted a medical source statement wherein he opined the claimant could lift or carry only up to ten pounds occasionally; sit for six hours, stand for six hours, and walk for five hours in an eight-hour working day; requires the use of a cane to ambulate; can frequently reach, handle, finger, feel, push or pull with the upper extremities; and frequently operate foot controls. (Exhibit 7F). Further, Dr. Elshazly opined the claimant can never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl[;] can occasionally tolerate exposure to moving mechanical parts and operate a motor vehicle; and only frequently be exposed to other environmental conditions. (Exhibit 7F, p.8–9).

. . .

Regarding the claimant's physical limitations, I have given some, but not great weight to Dr. Elshazly's opinion that the claimant is limited to sedentary lifting at ten pounds, can "never" perform postural movements, but is capable of performing the full range of sitting (6 hours), standing (6 hours), and walking (5 hours).  (Exhibit 7F).  The extent of these limitations—specifically that the claimant is not capable of performing postural movements—is not supported by the evidence of record as a whole or even the claimant's testimony.  However, the record

> does indicate that some limitations are certainly warranted, therefore, the
> opinions have been given some, but not great weight.

(Tr. 19, 21).

## V.    DISCUSSION

Plaintiff contends that a violation of due process occurred because the ALJ, or

the "hearing office," failed to provide Plaintiff's counsel with Exhibit 7f—which was

comprised solely of the medical findings and report of Dr. Elshazly—prior to

Plaintiff's hearing before the ALJ.  As Plaintiff relates, Dr. Elshazly's report, dated

August 22, 2013, was not included in the electronic record when counsel downloaded

it on February 27, 2014, nor was it supplied in the compact disc containing the

medical record that was presented to counsel on the day of the May 9, 2014, hearing

(ECF No. 14 at 5).  Instead, both copies of the record contained only Exhibits 1f

through 6f.  During the ALJ's hearing, no express reference was made to Exhibit 7f,

and counsel thus represents that he was unaware of the existence of Exhibit 7f until

he read the ALJ's report containing the references to the exhibit and Dr. Elshazly's

findings as set out above.  Plaintiff raised the issue of the missing exhibit, as well as

the due process error that he now claims before this court, to the Appeals Council,

which summarily affirmed the ALJ's decision without opinion.

Due process requires that a social security claimant be provided a full and fair hearing and the opportunity to be heard "at a meaningful time and in a meaningful manner."  Martz v. Commissioner, Social Sec. Admin., 649 F. App'x 948, 962 (11th Cir. 2016) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).  "Due process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports."  Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985).  Consequently, decisions that rely on such reports are subject to invalidation.  Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981).  Due process concerns may generally be satisfied when the claimant is provided the opportunity to challenge the reports through interrogatories to the medical personnel involved or to otherwise countermand the evidence.  Martz, 649 F. App'x at 963.  However, "where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions, cross-examination is of extraordinary utility."  Id. at 964 (quoting Demenech v. Secretary of the Dept. of Health and Human Services, 913 F.2d 882, 885 (11th Cir. 1990)).[6]

---

[6]  The parties debate whether a violation of procedure as set out in the Hearings, Appeals, and Litigation Law Manual ("HALLEX") can constitute a basis for the type of due process violation alleged here, but the court finds that, independent of the HALLEX rules, the Demenech and Martz decisions generally establish that an error in due process occurs when a claimant is deprived of an opportunity to confront medical reports that are relied upon in the ALJ's decision.

Defendant does not challenge Plaintiff's assertion that the record he received from the ALJ did not contain Exhibit 7f.  Rather, Defendant asserts that Plaintiff should have discovered the *absence* of the record from the file, given that during the hearing additional exhibits were proffered and numbered.  As this argument goes, Plaintiff had submitted two exhibits on April 25, 2014, approximately two weeks in advance of the hearing, and then submitted two more exhibits shortly before the hearing.  During the hearing, these last two exhibits were acknowledged, and the ALJ announced that they would be identified as Exhibits 10f and 11f (Tr. 33).[7]  Defendant contends that the numbering of these exhibits should have alerted Plaintiff to the fact that there was an Exhibit 7f already in the record, to which his four exhibits were added, and Plaintiff thereby should have objected to the exhibit list when he had the opportunity (Tr. 33–34).  Defendant asks this court to fault Plaintiff, or rather Plaintiff's counsel, for failing to deduce the existence of a missing exhibit from the skewed filing sequence, and from this clerical error suffer the consequence of being unable to address the contents of the exhibit.  The court declines to attach such a consequence.  While the court stops short of simply condoning counsel's oversight, to saddle counsel with this error would in effect be to overlook the ALJ's own error,

---

[7]  There is no indication from either party or from the record itself that Plaintiff's first two additional exhibits were acknowledged, and more importantly identified for Plaintiff as Exhibits 8f and 9f either in advance of the hearing or during it.

most likely clerical as well, in evidently failing to include the exhibit in the record in the first place.  Moreover, after counsel discovered the error, he in essence notified the Appeals Council of it by presenting the same claim he now presents here.

Similarly, Defendant argues that since Plaintiff was physically examined by Dr. Elshazly at the time or just before he made his report, Plaintiff was effectively on notice about the report that followed.  However, given that there is no indication from the record that Plaintiff's counsel had any involvement or knowledge regarding the appointment with Dr. Elshazly or the resulting report,[8] which occurred over eight months before the ALJ's hearing, the court again refrains from depriving Plaintiff of his rights to due process because of this ministerial oversight.  While the court recognizes that Plaintiff himself knew about the examination, it is difficult to sit in judgment over his layman's error in not communicating the event to counsel when there is no evidence in the file that the ALJ (or whoever requested the examination) notified counsel either, even when the report was inserted into the record.[9]

---

[8] Plaintiff indicates that Dr. Elshazly's one-time examination and report was Dr. Elshazly's only involvement in the case (*see* ECF No. 14 at 7).

[9] The lone document found by the court, a billing invoice, indicates that Division of Disability Determinations (DDD) was billed for Dr. Elshazly's examination and report, thus suggesting that either the ALJ, DDD, or some other agent of the Commissioner authorized the examination (Tr. 317).  In any event, there is no indication within the record that Plaintiff's counsel had any relevant knowledge or participation in the examination process.

Notwithstanding the speculation of where exactly the error lies and in what proportion, the fact remains that Plaintiff was deprived of Dr. Elshazly's report during the hearing and therefore did not have the opportunity to be heard at a meaningful time and in a meaningful manner.  Defendant argues that the <u>Demenech</u> decision is unavailing for Plaintiff because the facts of that case show that the ALJ obtained a medical report after the hearing and did not allow counsel for the plaintiff the opportunity to depose and cross-examine the doctor who authored the report.  913 F.2d at 883.  Defendant draws the distinction that in the instant case the medical report was not submitted after the hearing but before it.  However, in light of the facts of the instant case, the court finds that counsel's lack of knowledge of the report during the hearing was tantamount to the situation in <u>Demenech</u> where counsel was refused the right to challenge the report post-hearing.  The key here is the scale or degree of the deprivation, not the timing of it.

Defendant also attempts to distinguish <u>Demenech</u> on grounds that the ALJ in that case substantially relied on the medical report in question to discredit the testimony of the claimant and the medical findings of the claimant's treating physician.  *Id.* at 884.  In this case however, Defendant asserts, Dr. Elshazly's report was given "some, but not great weight" by the ALJ, and therefore, unlike in <u>Demenech</u>, the report was actually helpful to Plaintiff's case.  The court recognizes

the distinction but does not find it pivotal.  It simply means that, where counsel in

Demenech was deprived of the opportunity to discredit the report or the doctor, in the

instant case counsel lost the opportunity to bolster the parts of the report that were

favorable, so as to perhaps alter the ALJ's findings regarding Plaintiff's residual

functional capacity, and to further illuminate the doctor's findings, so as to perhaps

resolve what the ALJ found to be conflicting aspects of the report.  Although an

unfavorable report makes it easier to discern the impact the report would have on an

ALJ's decision, the court does not read into Demenech any requirement that the report

be negative in order to prejudice the outcome of the case.

Accordingly, the court finds that Plaintiff's inability to confront the report of

Dr. Elshazly infringed upon his rights to due process at the hearing before the ALJ.

This case will therefore be remanded for further proceedings.  In so doing, the court

notes that there may be some question regarding the amount of process that would be

due upon remand.  This would stem from the fact that, in Demenech, the court noted

that the report in question was used against the plaintiff in a manner that was

diametrically opposed to the weight of evidence in that case.  As a result, the

Demenech court noted that, while counsel for plaintiff had already been able to object

to the report by way of affidavit, the opportunity for cross-examination was "of

extraordinary utility" and was therefore required.  913 F.2d at 884–85.  By contrast,

the court in <u>Martz</u> found that, because counsel had already availed himself of the opportunity to submit interrogatories to challenge and rebut the doctor's findings before the ALJ issued his decision, the ALJ's denial of counsel's request for cross-examination was not found to violate due process.  649 F. App'x at 963–64.  The court further notes that Plaintiff does not clearly state whether he would request to depose and cross-examine Dr. Elshazly or whether a lesser measure such as interrogatories or simply the opportunity for argument against the ALJ's findings relative to Dr. Elshazly's report would suffice.  Given the situation, the above cases, and ultimately how they might affect the findings of the ALJ, the matter is left to the discretion of the Commissioner.

Finally, the court declines to address Plaintiff's second claim, that the ALJ failed to properly weigh the opinion of Plaintiff's licensed clinical social worker, Pamela Trompeter, because evidence supplied by Ms. Trompeter is prone to being re-weighed in conjunction with any new testimony or evidence that is brought out relevant to the first issue above.  *See* <u>Demenech</u>, 913 F.2d at 884 (finding that, when one issue is cause for remand, other issues need not be addressed); <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (declining to address other issues because they might be reconsidered upon remand).

VI.   CONCLUSION

In conclusion, for the reasons provided above, this case should follow the general rule when errors occur, which is to reverse and remand for additional proceedings. *See, e.g.*, <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir.1993) (referring to general practice); <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223–24 (11th Cir.1991).

Accordingly, it is **ORDERED**:

1.     Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

2.     The Commissioner's decision denying benefits is **REVERSED**.

3.     This case is **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**DONE AND ORDERED** this <u>22nd</u> day of March 2017.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**